

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

AFM:ADR
F. #2022R00177

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 14, 2025

By ECF

The Honorable Eric R. Komitee
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Charles O. Parks III
Criminal Docket No. 24-105 (EK)

Dear Judge Komitee:

The government respectfully submits this letter regarding the defendant Charles Parks' sentencing hearing, which is currently scheduled for May 29, 2025. The government requests that the Court deny any forthcoming motion by the defendant to delay sentencing, and further moves to quash two subpoenas issued by the defendant that the government understands will provide the basis for the expected defense motion.

I. Background

From in or about January 2021 through August 2021 the defendant operated a large-scale "cryptojacking" operation in which he defrauded two well-known providers of cloud computing services out of more than $3.5 million worth of computing resources in order to mine nearly $1 million in cryptocurrency. The defendant deceived the providers into approving heightened privileges and benefits, including elevated levels of computing services, and deflected inquiries from the providers regarding questionable data usage and mounting unpaid subscription balances. The defendant then converted and laundered the cryptocurrency proceeds through cryptocurrency exchanges, a non-fungible token (NFT) marketplace, an online payment provider, and traditional bank accounts, and structured money movements to avoid transaction reporting requirements under federal law. The defendant used the proceeds of the scheme to make extravagant purchases, including a Mercedes Benz luxury car, jewelry and first-class hotel and travel expenses.

On April 15, 2024, an indictment was unsealed charging the defendant with wire fraud, in violation of 18 U.S.C. § 1343 (Count One); money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and (ii) (Counts Two and Three); and unlawful monetary transactions, in violation of 18 U.S.C. § 1957(a) (Counts Four through Six). *See* ECF No. 1. On December 5,

2024, the defendant pled guilty before United States Magistrate Judge Cheryl L. Pollak, pursuant to a plea agreement, to Count One of the indictment. This Court accepted the plea and scheduled sentencing for May 29, 2025 at 10:00 a.m.

On April 24, 2025, the Probation Department disclosed the Presentence Investigation Report ("PSR"). Pursuant to the Court's individual rules and practices, any objections to the PSR were to be submitted consistent with the requirements of Federal Rule of Criminal Procedure 32(f), which requires that such objections be submitted within fourteen days of the PSR's disclosure. *See* Fed. R. Crim. P 32(f)(1). The defendant did not submit any objections to the PSR. Also pursuant to the Court's individual rules and practices, the defendant's sentencing submission was due twenty-one days prior to sentencing, on May 8, 2025. The defendant did not make a submission.

On May 9, the government wrote defense counsel to inquire whether the defendant intended to make a submission. Counsel informed the government, for the first time, that the defendant did not intend to submit a sentencing letter, and in fact planned to seek to adjourn sentencing altogether, for a period of at least four months. Counsel informed the government that it had served subpoenas on the two victim service providers (referred to in the indictment and PSR as "Subsidiary-1" and "Company-2") seeking information purportedly relevant to the calculation of loss amount. Counsel indicated that it needed additional time to "litigate compliance" with the subpoenas, review any materials it might receive, and formulate any PSR objections that might arise therefrom. The government requested copies of the subpoenas and any relevant materials obtained in response.

On May 12, 2025, counsel provided the government with the Court's October 11, 2024 *ex parte* order authorizing the subpoenas and summarizing their contents. *See* ECF No. 21 (under seal). According to the order, the subpoenas demanded from each company, in sum and substance:

1. "Any and all billing statements for the time period 01/01/2021– 09/30/2021" for the defendant's accounts / billing profile;

2. "Records containing the following information for each [computing] instance[1] billed" by those accounts during that time period:

    - "Instance start date & time
    - Instance end date & time
    - Approved Service Limit at the time the instance was run

---

[1] "Instance" is a computer science term that refers to the occurrence of any variable, data structure, function or method during the runtime of a computer program. Both Subsidiary-1 and Company-2 provide multiple types of instances as part of their cloud computing services. As alleged in the indictment, the defendant repeatedly deceived Subsidiary-1 and Company-2 into providing him access to powerful and expensive instances, including instances called "graphics processing units," and launched tens of thousands of these instances to mine cryptocurrency.

- Type of instance
- Whether the instance was spot or on-demand
- CPU configuration
- GPU configuration
- Storage configuration
- Geographic region
- Network activity log (Application, Source IP, Destination IP, Total Connection Time)
- Billing rate
- Actual cost to [the company] (electricity, infrastructure, overhead)";

3. "The terms of service agreed to and applicable" to the accounts during that time period;

4. "Any and all deferred billing accommodations requested" for the accounts during that time period; and

5. "Any and all disputes of charges or requests for explanations of charges filed" with respect to the accounts during that time period.

*Id.*

As of this submission, the docket does not reflect any litigation over the subpoenas or compliance with the subpoenas since the Court's order last year.

II. Argument

The defendant has already failed to comply with the Court's deadlines and should not be granted additional time to conduct a fishing expedition for data that might hypothetically support PSR objections, when none existed at the time the defense objections were due to be filed. More than six months have passed since the Court granted the defendant's request to serve the subpoenas and, crucially, the defendant pled guilty during that time. As described below, the information he seeks is thus no longer relevant to any proceeding in this case, has already been provided to him, does not exist, or is otherwise improper under Rule 17. The Court should quash the subpoenas and proceed to sentencing without delay.

A. Legal Standard

Federal Rule or Criminal Procedure 17(c) authorizes the use of pretrial subpoenas to obtain admissible evidence. *See United States v. Nixon*, 418 U.S. 683, 700 (1974); *see also* Fed. R. Crim. P. 17(c)(1) (providing that "[a] subpoena may order the witness to produce any books, papers, documents, data, or other objections the subpoena designates"). A Rule 17(c) subpoena may also properly be used to gather documents for a pre-trial or post-trial hearing. *See United States v. Cognetta*, No. 18-CR-14 (VM), 2019 WL 4198544, at *2 (S.D.N.Y. Aug. 13, 2019).[2]

---

[2] Many courts have proceeded with skepticism in the pre-sentencing context, however. *See, e.g.*, *United States v. Hills*, No. 16-CR-329, 2019 WL 1873220, at *3 (N.D. Ohio

"Under *Nixon*, the party seeking the production of documents must demonstrate that the materials sought to be produced are (1) relevant, (2) admissible, (3) specifically identified, and (4) not otherwise procurable." *Cognetta*, 2019 WL 4198544 at *2 (citing *Nixon*, 418 U.S. at 699-700); *see also United States v. Goldstein*, No. 21-CR-550 (DC), 2023 WL 3662971, at *2 (E.D.N.Y. May 24, 2023). Moreover, under Rule 17(c)(2), "courts may quash subpoenas that are 'unreasonable or oppressive' or where it is clear that the party seeking production has not met its burden of demonstrating that the threshold requirements for issuance have been met." *United States v. Weisberg*, No. 08-CR-347 (NGG), 2010 WL 5027537, at *1 (E.D.N.Y. Dec. 3, 2010) (citations omitted).

Rule 17(c) "was not intended to provide a means of discovery for criminal cases." *Nixon*, 418 U.S. at 700; *see also Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951) (same). Instead, because the rule's "purpose is trial-focused," a Rule 17(c) subpoena "may be used only to obtain materials admissible as evidence at trial." *United States v. Louis*, No. 04-CR-203 (LTS), 2005 WL 180885, at *3 (S.D.N.Y. Jan. 27, 2005). Accordingly, a defendant seeking documents pursuant to a Rule 17(c) subpoena bears the burden of satisfying the "strict standard" set forth by the Supreme Court in *Nixon*, namely of "specifically identifying the materials sought and showing that they are relevant and admissible." *United States v. Brown*, No. 95-CR-168 (AGS), 1995 WL 387698, at *9 (S.D.N.Y. June 30, 1995); *see also United States v. RW Pro. Leasing Servs. Corp.*, 228 F.R.D. 158, 162 (E.D.N.Y. 2005) (citing *Nixon*, 418 U.S. at 699-700); *Louis*, 2005 WL 180885, at *9 (party seeking documents pursuant to a Rule 17(c) subpoena must be able to "reasonably specify the information contained or believed to be contained in the documents sought" and establish both relevancy and admissibility) (citation omitted).

Importantly, Rule 17(c) is different from civil rules that permit the issuance of subpoenas to obtain documents or materials which, although themselves not admissible, might lead to admissible evidence. *See United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. Feb 17, 1995); *see also United States v. Gross*, 24 F.R.D. 138, 141 (S.D.N.Y. 1959) (Rule 17(c) cannot be used "to obtain leads as to the existence of additional documentary evidence or to seek

---

Apr. 26, 2019) ("[T]he Court is not convinced that the rule is available to compel the production of documents for use at sentencing.") (citing *United States v. Martin*, 141 F.3d 1152 (Table), 1998 WL 51206 (2d Cir. Feb. 10, 1998) (Rule 17(c) is "a discovery provision that relates solely to pretrial matters. The decision to deny the defendant's subpoena request for purposes of sentencing or a sentencing hearing is in the sound discretion of the district court."); *United States v. Pierre*, No. (S2) No. 22-CR-19 (PGG), 2023 WL 7004460, at *18 (S.D.N.Y. Oct. 24, 2023) (the "more attenuated the subpoena is from a trial, the greater [the] concern" of an "impermissible discovery motive") (citing *United States v. Mirzoyan*, No. 10-CR-895 (PGG), ECF No. 804, Slip Op. at 5-11 (S.D.N.Y. June 11, 2014) (denying motion to reconsider previous denial of Rule 17(c) subpoenas in connection with sentencing and citing *Bowman Dairy* for proposition that Rule 17(c) is intended for use at trial)); *United States v. Nix*, 251 F. Supp. 3d 555, 561 (W.D.N.Y. 2017) (the decision whether to allow a subpoena request for purposes of sentencing or a sentencing hearing is not made pursuant to Rule 17(c), but rather is "committed to the sound discretion of the trial court"); *United States v. Shrader*, No. 09-CR-0270, 2010 WL 4781625, at *2 (S.D. W.Va. Nov. 16, 2010) (Rule 17(c), "as Courts have considered it, anticipates the production of information prior to trial, not sentencing").

information relating to the defendant's case. This type of discovery, permissible under the Federal Rules of Civil Procedure, has not been authorized for criminal trials"). Thus, "a mere hope that the documents, if produced, may contain evidence favorable to the defendant's case will not suffice. Rule 17(c) requires a showing that the materials sought are currently admissible in evidence; it cannot be used as a device to gain understanding or explanation." *United States v. Rich*, 1984 WL 845, at *3 (S.D.N.Y. 1984) (internal quotations and citations omitted); *see also United States v. Purin*, 486 F.2d 1363, 1368 (2d Cir. 1973); *United States v. Murray*, 297 F.2d 812, 821 (2d Cir. 1962).

Thus, a Rule 17(c) subpoena may not be used to conduct a "general 'fishing expedition.'" *Nixon*, 418 U.S. at 700. Indeed, precisely because the Rule poses such a risk of abuse and misuse, courts are stringent in holding those seeking to obtain documents under Rule 17(c) to their burden of demonstrating that the documents sought are relevant, admissible and specifically identified, and it is "insufficient" for a party to show only that the subpoenaed documents "are potentially relevant or may be admissible," *RW Pro. Leasing Servs.*, 228 F.R.D. at 162. Requests accurately characterized as fishing expeditions "deserve[] to be quashed" on that basis alone. *United States v. Chen De Yian*, No. 94-CR-719 (DLC), 1995 WL 614563, at *2 (S.D.N.Y. Oct. 19, 1995).

Rule 17(c)(2) permits this Court to quash or modify a Rule 17(c) subpoena on a motion promptly made. In addition to the subpoena's recipient, the government has standing in its own right to move to quash a subpoena "based 'upon its interest in preventing undue lengthening of the trial, undue harassment of its witness, and prejudicial over-emphasis on [the witness's] credibility.'" *United States v. Giampa*, No. 92-CR-437 (PKL), 1992 WL 296440, at *1 (S.D.N.Y. Oct. 7, 1992) (quoting *United States v. Raineri*, 670 F.2d 702, 711 (7th Cir. 1982)); *see also United States v. Vasquez*, 258 F.R.D. 68, 71-72 (E.D.N.Y. 2009); *Nix*, 251 F. Supp. 2d at 561; *Chen De Yian*, 1995 WL 614563, at *2.

Moreover, even if the government did not have standing, "the Court has an independent duty to review the propriety of the subpoena – a duty . . . that requires the Court to consider . . . whether the subpoena itself comports with the requirements of Rule 17." *Vasquez*, 258 F.R.D. at 72; *see also United States v. Coriaty*, No. 99-CR-1251 (DAB), 2000 WL 1099920, at *6 n.4 (S.D.N.Y. Aug. 7, 2000) (considering government's motion to quash third-party subpoena, notwithstanding defendant's objections on ground that government had no standing, because "it is the responsibility of the court, not the opposing party, to ensure that a subpoena secured under Rule 17(c) is for a proper purpose") (citation omitted).

B. Discussion

The Court should quash the defendant's subpoenas because the information he seeks to learn from them is already available to him, does not exist, or is irrelevant to his sentencing. Moreover, compliance with his requests would be unduly burdensome and oppressive for the victim service providers and would delay sentencing indefinitely. *See Cognetta*, 2019 WL 4198544 at *5 (quashing pre-sentencing subpoena where requested material was either already available to the defendant, or irrelevant to his sentencing and unduly burdensome to compile); *Hills*, 2019 WL 1873220 at *3 (quashing subpoena issued "on the eve

of [] sentencing"); *United States v. Constantine*, No. 21-CR-530 (SHS), 2023 WL 3045408, at *1 (S.D.N.Y. Apr. 21, 2023) (same).

*First*, the subpoenas fail *Nixon*'s specificity requirement. The requests ask for broad categories of information that the defendant does not know to exist, with modifiers like "any and all" and "records containing" repeated throughout. *See United States v. Tagliaferro*, No. 19-CR-472 (PAC), 2021 WL 980004, at *3 (S.D.N.Y. Mar. 16, 2021) ("The terms employed here—"any," "all," and "whatever"—do not evince specificity."). Indeed, there are no such "records" containing much of the information the defendant requests. For example, there is no record maintained by Subsidiary-1 reflecting "Actual cost to [Subsidiary-1] (electricity, infrastructure, overhead)" of the services fraudulently stolen by the defendant. The assumption that Subsidiary-1 maintains documents allocating fractions of its overall infrastructure and overhead costs (an immensely complicated and constantly evolving metric) to each transaction with a customer is absurd on its face. Nor, for example, is there any reason to believe that either victim company has any records of "disputes of charges" made by the defendant. The government's investigation did not identify evidence of any such disputes, including in the defendant's emails where his many other communications with the victim companies can be found. As in *Tagliaferro*, the defendant's subpoena requests resemble civil interrogatory demands and "read[] like a discovery request, which is not permitted under Rule 17(c)." *Id.* (citing *Bowman Dairy Co.*, 341 U.S. at 220). The defendant's requests are exactly the type of fishing expedition that is not permitted. *See Nixon*, 418 U.S. at 700.

*Second*, the subpoenas fail *Nixon*'s requirement that the requested information not be otherwise procurable. The defendant received detailed documents and spreadsheets in discovery that were compiled by Subsidiary-1 and that provide a breakdown of the services used by the defendant, down to the dates and times of specific computing instances employed—the very data he requests in the subpoenas. In particular, the materials provided to the defendant reflect instance start and end time, type of instance (including spot versus on-demand), configuration, geographic region, and IP log-in history, all things the defendant requests in the subpoenas. The defendant also possesses the information he seeks about approved service limits; his communications with Subsidiary-1 about those limits are all in his emails, which were collected by the government and produced back to him. Lastly, the defendant received in discovery email invoices sent to him by Company-2 accounting for Company-2's losses, as well as emails from Company-2 discussing billing accommodations. Rule 17(c) does not permit the defendant to demand information that is already available to him. *See Cognetta*, 2019 WL 4198544 at *3 (citing *In re Irving*, 600 F.2d 1027, 1034 (2d Cir. 1979) and *Nixon*, 418 U.S. at 699-700); *United States v. Columbo*, No. 04-CR-273 (NRB), 2006 WL 2012511, at *15 (S.D.N.Y. July 18, 2006) ("[T]he requests set forth in the proposed subpoenas are excessively broad and burdensome and some of the requests seek documents that duplicate materials already produced by the Government.").

*Third*, the subpoenas fail *Nixon*'s relevance requirement. To the extent that the defendant seeks to challenge Subsidiary-1's and Company-2's calculations of their own cost of services, he has no basis to do so. Those figures were supported by extensive discovery provided to the defendant. As stated in the PSR, the defendant fraudulently stole $2,581,236.83 in Subsidiary-1's services and $969,731.92 in Company-2's services. *See* PSR ¶ 27. The defendant did not object to the PSR. To the extent he seeks to somehow assign a value to the

raw cost of providing those services ("Actual cost to [the company] (electricity, infrastructure, overhead"), and to argue that such a number is a more appropriate estimation of loss amount, that attempt is improper and should be rejected. Such an approach is not consistent with the law governing loss amount. Under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"), loss under Section 2B1.1(b)(1) for theft of resources is "[t]he fair market value of the property unlawfully taken." *See* U.S.S.G. § 2B1.1 Application Note 3(B)(i). The estimate of that loss "shall be based on available information," and a sentencing court "need only make a reasonable estimate of the loss." *Id.* at Application Note 3(B); *see United States v. Nachamie*, 28 F. App'x 13, 25 (2d Cir. 2001) ("The district court need only make a reasonable estimate of the loss, given the available information[.]") (quoting *United States v. Carboni*, 204 F.3d 39, 46 (2d Cir.2000).

Here, there is ample evidence from each victim-company of the costs of the expensive computing instances and cloud resources provided to the defendant. There is no other relevant analysis. *See also United States v. Granik*, 386 F.3d 404, 414 (2d Cir. 2004) (citing predecessor Guideline provision stating that loss is "the value of the money, property, or services unlawfully taken" and is based upon the "fair market value" of stolen property"); *United States v. Wasz*, 450 F.3d 720, 727 (7th Cir. 2006) ("[T]he price at which the retailers would have sold that merchandise serves as a reasonable estimate of the loss.") (collecting cases across circuits deciding same); *see also United States v. Hoffman*, 901 F.3d 523, 536 (5th Cir. 2018) (protected property includes both money in hand and money due) (citing *Pasquantino v. United States*, 544 U.S. 349, 356 (2005)). Whether the losses are considered stolen resources or money due, the result is the same—the victim companies are out the money the defendant owed but never paid them. Other requests in the subpoenas, such as terms of service for each account, may have been pertinent prior to the defendant's plea but are entirely irrelevant to the disputed issues at sentencing—namely, loss amount.[3] For these reasons, the subpoenas fail *Nixon*'s relevance requirements. *See Cognetta*, 2019 WL 4198544 at *4 (quashing subpoena where requested documents were "not relevant to [the defendant's] sentencing").

*Fourth*, the information the defendant seeks is extremely impractical, if not completely impossible, to compile. To assess the raw cost of providing each computing resource at issue over a period of months would require a sprawling analysis by each victim-company of the costs associated with developing, building, maintaining, marketing and providing the at-issue computing resources, which is virtually impossible to do with any measure of precision or accuracy given the complex and evolving nature of these metrics, and the many subjective judgments that would be required to categorize, total and apportion costs. Moreover, such an exercise would be incredibly burdensome to conduct, and would reveal enormous quantities of proprietary company information, to no reliable end. *See Cognetta*, 2019 WL 4198544 at *5 ("compliance with the request . . . would be unduly burdensome or oppressive"); *United States v. Skelos*, 988 F.3d 645, 661 (2d Cir. 2021) ("We find no abuse of discretion in the district court's decision to quash these subpoenas as 'unreasonable or oppressive' under Rule 17."). The law as

---

[3] In his plea agreement, the defendant stipulated to the Guidelines estimate and waived any right to a *Fatico* hearing, except that he retained the right to challenge the loss amount. That is the only issue he retained the right to challenge.

to loss amount does not necessitate such an endeavor, nor does Rule 17 permit the defendant to demand it of his victims.

The defendant was arrested more than one year ago and has now pled guilty to his crimes. He has received voluminous discovery from the government and has had ample time to seek out the information he believes he needs to defend his case. To the extent he has not received the information requested in the subpoenas six months ago, there is no reason to believe that the passage of still more time will get him that information. His requests will only result in the delay of his sentencing indefinitely.

III.     Conclusion

For these reasons, the Court should quash the defendant's subpoenas and reject any forthcoming request by him to delay sentencing to accommodate his improper and unrealistic expedition to fish for material in support of his objections.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:     /s/
Andrew D. Reich
Assistant U.S. Attorney
(718) 254-6452

cc:     Clerk of Court (EK) (By ECF and Email)
Counsel of Record (By ECF and Email)
United States Probation Officer (By Email)