**Federal Defenders**
OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza, 16th Fl., Brooklyn, NY
11201 Tel: (718) 330-1200  Fax: (718) 855-0760

Tamara L. Giwa
*Executive Director and Attorney-in-Chief*

Michelle A. Gelernt
*Attorney-in-Charge*

May 19, 2025

By ECF and Email
The Honorable Eric Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   United States v. Charles Parks, 24-cr-105 (EK)

Dear Judge Komitee:

We write in response to the government's motion to quash the Rule 17(c) subpoenas issued by Your Honor in this case, and its accompanying request to proceed immediately to sentencing. ECF No. 34.

Throughout the entirety of this case, the defense has made clear to the government that one of our main points of dispute is the amount of loss suffered by the service providers. Because of that dispute, the defense specifically reserved in the plea agreement the right to challenge the loss amount for Sentencing Guidelines purposes. *See* Plea Agreement ¶ 2. In the days before Mr. Parks pleaded guilty, the defense informed AUSA Reich that it had obtained subpoenas from the Court for additional documentation from the service providers relevant to its argument regarding the loss amount, and that the defense would likely request an adjournment of sentencing to allow for additional time to receive and analyze those documents. AUSA Reich had no opposition to this approach and did not express any objection to the subpoenas. Indeed, he informed defense counsel that he would likely have no issue with an adjournment of sentencing for a reasonable length of time.

Now, however, the government feigns surprise at our intent to attempt to enforce those subpoenas and to request that adjournment. Instead of discussing its apparent concerns with defense counsel, the government seeks to quash the subpoenas that would allow the defense access to information that bears directly upon a critical Sentencing Guidelines issue. Moreover, and to the defense's (actual) surprise, the government asks the Court to deny a first adjournment of sentencing to an out-of-custody, out-of-district defendant (who has a perfect record of compliance on pretrial release) whose counsel (1) were under the good-faith belief that the

government would not oppose its adjournment request and (2) are still attempting to obtain the documents the service providers have been Court-ordered to produce.

The Court should deny the government's motion in its entirety. First, the Court should deny the government's request to quash the Rule 17 subpoenas, both because the government lacks standing to challenge the subpoenas at issue here and because the information sought is highly relevant to sentencing and otherwise meets Rule 17's requirements. Second, the Court should deny the government's unreasonable and unfair request to proceed immediately to sentencing. Instead, the defense respectfully requests that the Court adjourn sentencing for a period of approximately four months so that the defense can continue to confer with the service providers, litigate compliance if necessary, and formulate its objections to the Guidelines calculation advanced by the government and the Probation Department with respect to the loss amount. In the alternative, the defense requests an adjournment for a period of at least four weeks to allow it an opportunity to formulate its objections using the materials currently available to it and to submit its sentencing materials for the Court's consideration.

## I.      Background

While the government provides some relevant background information in its motion, it is missing several important facts.

On September 12, 2024, the defense filed an *ex parte* motion requesting that subpoenas be issued to the two service providers named in the indictment as providing cloud computing services to Mr. Parks. ECF No. 17. In its motion, the defense outlined why it was seeking the requested records and explained precisely how those records were relevant to Mr. Parks's defense:

> The accuracy and propriety of the bills Amazon and Microsoft sent to Mr. Parks are material issues to his defense and the parties' plea negotiations. In order to test the government's allegations that he defrauded Amazon and Microsoft out of $3.5 million, it is critical to examine the monthly bills to determine if they accurately reflect Mr. Parks's instance consumption, the types of instances he was given access to, the service limits in place for Mr. Parks at the time each instance was used, and the billing rate for each instance. To date, despite making specific requests to the government, the defense has not received *any* monthly invoices from Microsoft detailing the amounts the government claims Mr. Parks owed for cloud computing services, nor any information detailing how such invoices would have been calculated. As for Amazon, the government has produced records of Mr. Parks's payment history and records of Mr. Parks's instance usage across different accounts and regions by date. However, the defense believes these records are incomplete, as they lack crucial information such as the total run time of each instance Mr. Parks used, whether each instance was an on-demand instance or a "spot" instance, the billing rate applicable to each instance used, the approved service limits in place for Mr. Parks's accounts across the time period charged in the indictment, and the actual cost to Amazon of the services provided (electricity, infrastructure, and overhead).

ECF No. 17 at 2 (footnotes omitted). The defense also explained that the information it was requesting was "critical for trial, *and will also be highly relevant as to Mr. Parks's Guidelines calculation* and thus to plea negotiations." *Id.* at 3 (emphasis added). The Court granted the motion and issued the subpoenas four days later.

Following the issuance of the subpoenas, the defense made clear to the government that it did not agree with the government's view of the loss amounts to the service providers. The defense also informed the government that it had subpoenaed records from the service providers and that it expected the process of receiving those records to take time. *See, e.g.*, Exhibit A (Email to AUSA Reich dated Oct. 15, 2024) ("As you know, one of the issues we have raised with you throughout this case is that we don't agree that the amounts Amazon and Microsoft claim Mr. Parks owes them are accurate. For Amazon, it is very complex and labor-intensive for us to check those amounts because we don't have a full set of data . . . . We are attempting to obtain that information from Amazon through the subpoena process but we suspect it will be some time before we have it."). Crucially, the records the defense sought in the subpoenas were precisely the same ones it had previously demanded from the government in discovery. While the government provided some of those records from one of the service providers (Amazon), those records were missing crucial information such as instance end times—and aside from monthly invoices, no responsive records were produced at all as to the other service provider (Microsoft).

On December 5, 2024, Mr. Parks pleaded guilty pursuant to a plea agreement. As stated above, the agreement, which was heavily negotiated, specifically allows for the defense to challenge the loss amount for Guidelines purposes. Leading up to the guilty plea hearing, defense counsel and government counsel spoke by phone about sentencing. Defense counsel again told the government that the defense was still attempting to obtain records it had subpoenaed from the service providers, and that it was likely that the defense would later seek to adjourn sentencing for that reason. The government indicated that it did not anticipate having any issue with an adjournment for a reasonable length of time. At no point did the government express any objection to the defense having sought subpoenas, nor did the government indicate any opposition to the defense doing so in the pre-sentencing context.

## II.     The motion to quash should be denied.

The government's motion to quash should be denied for two reasons.

First, the government lacks standing to challenge the subpoenas at issue. The government is mistaken in its suggestion that it possesses standing in its own right. As a number of courts in the Southern and Eastern Districts of New York have held, the government generally lacks standing to challenge third-party subpoenas where there is no evidence those third parties have sought the government's intervention and there is no claim of privilege or proprietary interest in the information sought. *See, e.g.*, *United States v. Nachamie*, 91 F.Supp.2d 552, 558 (S.D.N.Y. 2000) ("A party generally lacks standing to challenge a subpoena issued to a third party absent a claim of privilege or a proprietary interest in the subpoenaed matter."); *United States v. Ray*, 337 F.R.D. 561, 571 (S.D.N.Y. 2020) (government has standing "when the non-party authorizes the Government to assert his or her right by request or by indicating its joinder in a motion to

quash") (citation and internal quotation marks omitted); *cf. United States v. Vasquez*, 258 F.R.D. 68, 71-72 (E.D.N.Y. 2009) (finding that the government had standing because the recipient had joined in the challenge).

Second, the subpoenas satisfy the requirements of Rule 17. The government's attempt to label the defense's requests as a "fishing expedition" is completely wrong. If that were the case, the Court would not have granted the defense's motion—which explained in detail why the information was needed—and authorized the subpoenas. The use of "any and all" does not automatically render a request less specific; rather, it is a routinely used phrase to ensure that all records containing the information sought are produced. Similarly, it is not "absurd" to request records reflecting the actual cost (electricity, overhead, etc.) to the companies of providing services to Mr. Parks's accounts. If no such records exist, as the government insists, then the service providers are free to say so.

It is also mistaken to suggest that the defense is already in possession of all the data requested in the subpoenas. While the government has produced a breakdown of services provided to Mr. Parks by Amazon, that data is incomplete. In particular, the spreadsheet containing a breakdown of each individual instance run by Mr. Parks's accounts (labeled in discovery as PARKS-002682) lists the type of instance, region, billing date, total usage, and total charge for each instance. However, it does not list the start and end times for each of those instances, nor does it list the approved service limits in place at the time each instance was running[1]—thus, the defense cannot independently verify whether the amounts Amazon charged Mr. Parks are accurate.

This need to verify the amounts billed to Mr. Parks is not merely academic. Indeed, the defense's review of the monthly invoices sent to Mr. Parks by Microsoft—which, unlike Amazon, produced records of the actual bills that it sent to him—shows that out of the $551,681.39 he was billed in 2021, $367,273.07 was either paid or credited back to Mr. Parks's account after he disputed the charges. *See* Ex. A. Therefore, there is certainly ample reason to check the accuracy of the amounts Amazon billed to Mr. Parks as well—a check that cannot be fully performed without, at a minimum, the start and end times for each instance and the billing rates and service limits in place when those instances were running.

The government is also incorrect that the only proper estimation of loss amount comes from the dollar amounts billed to Mr. Parks by the two service providers. Loss estimates must be based on available information, considering various factors that are "appropriate and practicable under the circumstances." USSG § 2B1.1, Comment n.3(C). Courts *may* consider "[t]he fair market value of the property unlawfully taken, copied, or destroyed." USSG § 2B1.1, Comment n.3(C)(i). However, "if the fair market value is impracticable to determine or inadequately measures the harm, the cost to the victim of replacing that property" may be considered instead.

---

[1] While the defense possesses Mr. Parks's emails requesting service limit increases, it would be very difficult and time-consuming to attempt to match up each of those requests made via email to a spreadsheet with thousands of entries. The defense believes it is likely the service providers can much more easily compile that information as part of any spreadsheets that are produced pursuant to the subpoenas.

4

*Id*; *see also United States v. Villa*, 744 F. App'x 716, 720–21 (2d Cir. 2018); *United States v. Lige*, 635 F.3d 668, 672 (5th Cir. 2011); *United States v. Howard*, 887 F.3d 1072, 1077 & n.1 (10th Cir. 2018) (collecting cases using replacement value as proper measure in the context of determining loss). Fair market value is not the appropriate metric for measuring loss under the Guidelines in this case. It is clear that the billing invoices issued to Mr. Parks from Microsoft and Amazon do not approximate the actual loss to the companies, but rather represent retail cloud computing services that are marked up for profit by some percentage. And as demonstrated by the discussion above regarding the Microsoft invoices, where well over half of the total charges to Mr. Parks were either paid or credited back to him, relying uncritically on the retail prices quoted by the companies in the invoices would overestimate—perhaps significantly so—the actual loss to them from Mr. Parks's conduct.

Finally, to the extent that the Court believes certain requests in the subpoenas would be too difficult or impractical to produce, the defense is amenable to narrowing the scope of the information it is requesting. As discussed above, the most crucial information needed for the defense to properly challenge the loss amount calculation under the Guidelines consists of the instance start and end times and the billing rates and service limits in place at the time each instance was running. Indeed, the defense has reached out to counsel for the service providers to express its willingness to meet and confer regarding narrowing the scope of production.

### III. The court should adjourn sentencing to allow for compliance with the subpoenas, or, in the alternative, to allow for a full presentation of the defense's objections to the Guideline calculation and its sentencing materials.

The Court should also deny the government's attempt to prematurely cut off the defense's efforts to challenge the Guideline calculation. As discussed above, until the government filed its motion to quash, the defense was under the impression (based upon earlier conversations on this exact issue with government counsel) that the government would have no objection to an adjournment of sentencing. Relying on that mistaken belief, the defense did not file objections to the presentence investigation report or a sentencing letter, although it fully intends to file both. While the defense regrets not communicating this to the Court sooner, we respectfully request that the Court decline to penalize Mr. Parks due to this sudden about-face by the government.

Mr. Parks is not in custody. He lives in Omaha, Nebraska, and has had no violations of the conditions of his pretrial release. This is his first request for an adjournment of sentencing. Respectfully, such adjournments are extremely common in this District under such circumstances. In order to continue conferring with the service providers and take action to enforce compliance with the subpoenas if necessary, the defense respectfully requests that the Court adjourn sentencing by four months. If the Court believes a shorter adjournment is appropriate, the defense respectfully requests at least four weeks so that it can prepare and file its written objection to the Guideline calculation and file its sentencing materials sufficiently in advance of sentencing.

Thank you for your consideration of this matter.

        Respectfully Submitted,

        /s/
        Jeffrey S. Dahlberg
        Samuel Jacobson
        Counsel to Charles O. Parks III
        Federal Defenders of New York Inc.

cc:    AUSA Andrew Reich (via ECF)