**Federal Defenders**
OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza, 16th Fl., Brooklyn, NY
11201 Tel: (718) 330-1200  Fax: (718) 855-0760

Tamara L. Giwa
*Executive Director and
Attorney-in-Chief*

Michelle A. Gelernt
*Attorney-in-Charge*

August 11, 2025

By ECF and Email
The Honorable Eric Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

           Re:    *United States v. Charles O. Parks III*, 24-cr-105 (EK)

Dear Judge Komitee:

      We write on behalf of Mr. Parks to withdraw his August 1 motion to proceed pro se. *See* ECF No. 48. After further discussions, Mr. Parks wishes to continue with current counsel.

      We also write to supplement our June 6 sentencing submission to include information about Mr. Parks's care for his mother and his own health conditions. This information, which was not discussed in detail in our original sentencing submission, further supports a sentence of probation in this case.

      **A.  Mr. Parks's Care for His Mother**

      In preparing for sentencing, Mr. Parks's greatest concern is for his mother. As briefly mentioned in our original sentencing submission, Mr. Parks is his mother's sole caretaker. As her only surviving child living in Omaha, his mother entrusts him to manage most of her business and financial affairs. For example, one week after his arrest in this case, Mr. Parks and his mother were both notified by Wells Fargo that it was closing both of their accounts (in her case, without any reason or explanation). Mr. Parks set up new accounts at a different bank and handled the transition of her retirement income and all her automatic bill payments. Mr. Parks also sets up and manages anything having to do with technology for his mother. This includes her cell phone, Internet service, computing devices, home security, and content streaming services. With the exception of reading e-mail, watching shows / events, selectively shopping online, and printing documents, his mother relies on him to help her with nearly everything else, including her taxes.

      Another concern for Mr. Parks is his mother's ability to manage two homes. Mr. Parks

currently lives in a home that his mother inherited, and he manages all its maintenance. For her safety and peace of mind, he also makes sure to be available whenever she requires contractor work in her own home.

Since Mr. Parks's arrest, his mother has become severely depressed, and she has started to show signs of dementia—both of which are conditions Mr. Parks's maternal grandmother also had. His mother also has been experiencing an increase of sciatic pain. Her health issues require regular assistance from Mr. Parks. *See* PSR ¶ 60. Just last week, Ms. Parks had a medical crisis. Fortunately, Mr. Parks was there and able to care for her, but he is deeply concerned about how she would fare in his absence.

### B. Mr. Parks's Health Concerns

In addition to his health issues discussed with the Probation Office, *see* PSR ¶¶ 72-74, Mr. Parks suffers from troubled breathing. This is his greatest health concern. Since he was a teenager, he has had allergic rhinitis and chronic rhinosinusitis, both most likely attributable to the high exposure of second-hand smoke in the households of his parents and grandparents. He has also had hay fever allergies since the same age. To be able to comfortably breathe daily, he uses several different nasal sprays and takes multiple antihistamine and decongestant medications throughout the day.

Another significant medical concern for Mr. Parks is his heart health. In 2022, he was diagnosed with high blood pressure. Following his most recent blood work from June 23, 2025, he was also diagnosed with high cholesterol and high triglycerides. He was recently prescribed 10mg of Lisinopril daily to treat his high blood pressure and 20mg of Simvastatin daily to treat the high cholesterol and high triglycerides.

His third health concern is his type 2 diabetes, with which he was initially diagnosed in early 2022. He also has severe distal symmetric peripheral neuropathy in his feet, which is how he found out about the diabetes. Six months after his initial diagnosis, through significant changes in diet, he was able to cut his Hemoglobin A1C by more than half (from >15% down to less than 7%) and was taken off medication. Since his arrest, his A1C is back to >14%, and his most recent blood work from June 23, 2025 showed his glucose level at 363 mg/dL (it should be < 125 mg/dL). He has recently restarted his prescriptions for 2,000 mg daily of Metformin (for diabetes) and 75 mg nightly of Amitriptyline (for neuropathy).

Mr. Parks's final health concern is his deteriorating vision. Having been born with oculocutaneous albinism type 2 (OCA2), he has always had trouble with his vision. Mr. Parks has worn prescription glasses since having eye surgery at a young age to correct his astigmatism. Since his arrest, his vision has become exponentially worse. On June 23, 2025, he was diagnosed with posterior subcapsular cataracts (PSCs) in both eyes; subsequently, he has been referred for further eye surgery, which cannot be scheduled until after sentencing.

      Thank you for your consideration of this letter.

                                             Respectfully Submitted,

                                             /s/
                                           Jeffrey S. Dahlberg
                                           Samuel Jacobson
                                           Counsel to Charles O. Parks III
                                           Federal Defenders of New York Inc.

cc:      AUSA Andrew Reich (via ECF)
          USPO Jeremy Toner